UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID P. DAVIS | No. 18 CR 813<br><br>Judge Robert W. Gettleman |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby submits this position paper with respect to the sentencing of defendant David Davis in the above-captioned matter. For the reasons set forth below, the government respectfully requests that the Court sentence defendant within the applicable Guidelines range.

## I. BACKGROUND

On November 29, 2018, the grand jury returned an indictment charging defendant with one count of possession of a firearm by a felon, in violation of Title 18, United States Code, Section 922(g)(1). Dkt. No. 1. On October 29, 2019, defendant pleaded guilty to the superseding information pursuant to a plea agreement. Dkt. Nos. 29; 30. This matter is set for sentencing on October 2, 2020. Dkt. Nos. 52.

## II. FACTUAL BACKGROUND

On August 17, 2018, Chicago Police Department officers responded to a call reporting a person with a firearm at a gas station, who had been observed on POD camera. *See* Presentence Investigation Report ("PSR"), at ¶ 13. Officers responded to the area and observed the defendant, who fit the description of the person in the surveillance footage, and who was observed to be armed, and attempted to conduct a

field interview. *Id.* The defendant fled on foot, across the street, causing several vehicles to abruptly stop. *Id.* While fleeing, the defendant removed the pistol from his pants and threw it over a fence, which was subsequently recovered and found to be a loaded Taurus Millennium G2 9mm, equipped with a seventeen-round capacity magazine. *Id.*

The firearm possessed by the defendant on August 17, 2018, had been reported stolen in November 2016. *Id.* at ¶ 14. There were also spent casings recovered from a shooting in July 2018 that appear to match the firearm possessed by the defendant. *Id.*

At the time he possessed the firearm, defendant knew that he had been convicted of at least one crime punishable by a term of imprisonment exceeding one year. Dkt. No. 30, ¶¶ 6, 9(c).

## III. SENTENCING GUIDELINES CALCULATIONS

### A. Offense Level

The government agrees with the probation officer's calculation of defendant's offense level. *See* PSR, ¶¶ 19–28. The calculation is based on the November 2018 Guidelines Manual. PSR, ¶ 18.

As set forth in the PSR, the base offense level for the charge in the indictment is 22, pursuant to Guideline § 2K2.1(a)(3), because defendant possessed a semiautomatic firearm that is capable of accepting a large capacity magazine, and defendant was previously convicted of one felony conviction for a controlled substance

offense. *See* PSR, ¶ 19. Pursuant to § 2K2.1(b)(4)(A), the offense level is increased by 2 levels, because the firearm possessed by defendant was stolen.

Finally, as set forth in the PSR, the defendant appears to have accepted responsibility for his criminal conduct, which would entitle him to a three-point reduction in his offense level. PSR, ¶¶ 26, 27. Accordingly, it is the government's position that the defendant's total offense level is 21.

**B. Criminal History Category**

The government agrees with the probation officer's determination that defendant has 11 criminal history points and is in criminal history category V. PSR, ¶ 49. The government also agrees that this calculation should include consideration of the fact that the defendant committed the instant offense while under a criminal justice sentence, and therefore, two points are added to the subtotal of nine points for the defendant's previous criminal convictions. *See* PSR, ¶ 50; USSG §4A1.1(d).[1]

**C. Advisory Guidelines Range**

It is the government's position that, with an offense level of 21 and his placement in criminal history category V, defendant faces an advisory Guidelines range of 70 to 87 months' imprisonment.

[1] In early September 2020, defense counsel informed the government that there is a pending motion in State Court to vacate the defendant's prior Aggravated Unlawful Use of a Weapon conviction. The government has since attempted to reach the defense to learn the status of this motion, but has not received additional information. Should the government learn more information from the defense related to the defendant's criminal history prior to sentencing, it respectfully requests the Court's permission to either reply to the defense's position (currently unknown to the government) or revise its recommendation.

## IV. APPLICATION OF SENTENCING FACTORS

In addition to the Guidelines calculations, the Court must consider the factors set forth in Title 18, United States Code, Section 3553(a) in determining an appropriate sentence. The framework requires that the Court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; and (5) the need to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). Considering these factors, a sentence within the Guideline range is sufficient, but not greater than necessary, to reflect the history of the defendant, the seriousness of defendant's offense, and afford adequate deterrence to future criminal conduct.

### A. Nature and Circumstances of the Offense, and General Deterrence

Possessing a firearm as a felon is a serious offense. As the Supreme Court has observed, in enacting the felon-in-possession statute, "Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States." *Huddleston v. United States*, 415 U.S. 814, 824 (1974). Accordingly, "[g]uns do not belong in the hands of felons," *United States v. Conley*, 291 F.3d 464, 473 (7th Cir. 2002), and the reason for that is straightforward: "'Once the gun is in the defendant's hands he need only pull the trigger, an act which can be completed in a split second and which is

controlled and influenced by nothing more than the defendant's whim.'" *United States v. Matthews*, 520 F.3d 806, 809 (7th Cir. 2008) (quoting *United States v. Lane*, 267 F.3d 715, 718 (7th Cir. 2001)).

Relatedly, there is a substantial need for general deterrence in this case. Society should know that if someone possesses a firearm as a felon, purchases a firearm for a felon, or gives a firearm to a felon that there will be consequences for those actions. This crime significantly contributes to gun violence and thus deserves a significant punishment. Firearms and firearm-related violence have plagued the City of Chicago for years, and continue to do so. *See, e.g.*, *United States v. Rocha*, 2019 WL 4384465, slip op. at *6 (citing the City of Chicago, Office of the Mayor, "Gun Trace Report 2017," which documents how "Chicago is essentially awash in guns, as police here seized nearly 7,000 crime guns during each of the four years studied;" or "six times as many gun recoveries per capita as New York City, and 1.5 times as many per capita as Los Angeles"); *see also* CHICAGO POLICE DEPARTMENT, "Crime Statistics –Week 38," accessible at https://home.chicagopolice.org/wp-content/uploads/2020/09/1_PDFsam_CompStat-Public-2020-Week-38.pdf (last accessed Sept. 25, 2020) (reporting a total of 2,369 shooting incidents in the city of Chicago so far in 2020, which is up from 1,572 incidents total from this time last year, or a 56% percent increase from 2019).

In this case, even beyond the criminal offense of possessing a firearm as a felon, defendant carried it in a public place during late night hours, and showed others

around him that he held a firearm. The defendant also fled from police in such a way as to stop traffic and then tossed the firearm into a parking lot area, which is accessible to the public during the day.

Moreover, defendant clearly has engaged in a course of conduct of unlawfully possessing firearms. Just five months before his arrest for this offense, he had just been released from custody for another firearms offense.

**B. History and Characteristics of Defendant**

A sentence within the advisory Guidelines range appropriately takes into account defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Defendant's criminal history shows that he has been in and out of prison since becoming an adult. Even before the instant felony conviction, the defendant incurred fifteen convictions within five years. *See* PSR, ¶¶ 36–48. In 2016, defendant pleaded guilty to yet another felony firearms offense, and still remained undeterred from continuing to illegally carry or possess a firearm. *See* PSR, ¶ 48. Further, defendant was not deterred from unlawfully possession a firearm despite being on parole at the time. Explaining defendant's criminal behavior as due to factors beyond his control would not change the seriousness of the offense nor the danger that the offense created for the public. Neither does it detract from the need to protect the public by preventing or deterring future violations by defendant or others.

In light of all of the Section 3553(a) factors, a sentence within the Guidelines range is sufficient but not greater than necessary to help promote respect for the law,

provide adequate deterrence, and serve as just punishment for defendant's criminal conduct.

## V. SUPERVISED RELEASE CONDITIONS

Pursuant to 18 U.S.C. § 3583(b)(2), the Court may impose a term of not more than three years of supervised release. The Guidelines provide for a term of supervised release of one to three years, pursuant to Guideline § 5D1.2(a)(2). PSR, ¶¶ 95, 96.

A three-year term of supervised release provides a significant period during which defendant will be supervised as he reintegrates into society, particularly in light of his extensive prior criminal history. In addition to the structure and supervision for defendant, such a term additionally protects the public for a period of time sufficient to ensure that the defendant does not reoffend. The government agrees with the Probation Office's recommendations for the conditions of supervised release to be imposed in this matter as outlined below, as the facts underlying the offense and detailed in the PSR support the imposition of those conditions. *See* PSR, at 29–35. Specifically, discretionary conditions 1, 4, 6 to 8, and 14 to 18 are intended to facilitate the probation officer's supervision of the defendant, which is important to promote the defendant's respect for the law and to deter the defendant from committing future crimes. Special conditions 1 to 3, 11, 13, and 14 are intended to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, and ensure that he is engaged in lawful pursuits rather than criminal activity.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range, followed by a three-year period of supervised release.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Esther S. Mignanelli*
Esther S. Mignanelli
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300